```
                    UNITED STATES DISTRICT COURT

                FOR THE WESTERN DISTRICT OF VIRGINIA

                       CHARLOTTESVILLE DIVISION

* * * * * * * * * * * * * *
HOUWELING INTELLECTUAL       *
PROPERTIES, INC., ET AL.,    * CIVIL ACTION 3:23-CV-00046
                             * NOVEMBER 13, 2023   10:00 A.M.
            Plaintiffs,      * MOTION HEARING
                             * VOLUME I OF I
vs.                          *
                             *
BFF LOUISA 1 LLC,            * Before:
                             * HONORABLE ROBERT S. BALLOU
            Defendant.       * UNITED STATES DISTRICT JUDGE
* * * * * * * * * * * * * *  * WESTERN DISTRICT OF VIRGINIA


APPEARANCES:

For the Plaintiffs:       JAYE G. HEYBL, ESQUIRE
                          Stradling Yocca Carlson Rauth
                          3075 Townsgate Road, Suite 330
                          Westlake Village, CA 91361

                          STEPHEN EDWARD NOONA, ESQUIRE
                          Kaufman & Canoles, P.C.
                          P.O. Box 3037
                          Norfolk, VA 23514

                          DOUGLAS QUINTON HAHN, ESQUIRE
                          Stradling Yocca Carlson & Rauth
                          660 Newport Center Drive, Suite 1600
                          Newport Beach, CA 92660

For the Defendant:        DEVON BEANE, ESQUIRE
                          K&L Gates LLP
                          70 West Madison Street, Suite 3100
                          Chicago, IL 60602


Court Reporter:           Judy K. Webb, RPR
                          210 Franklin Road, S.W., Room 540
                          Roanoke, Virginia 24011
                          (540)857-5100 Ext. 5333

         Proceedings recorded by mechanical stenography.
Transcript produced by computer.
```

Houweling v. BFF Louisa - 11/13/2023

```
 1  APPEARANCES (Continued):

 2  For the Defendant:        DEAN McNAIR NICHOLS, JR., ESQUIRE
                              K&L Gates, LLP
 3                            430 Davis Drive
                              Morrisville, NC 27560
 4
                              JASON ENGEL, ESQUIRE
 5                            K&L Gates LLP
                              70 West Madison Street, Suite 3100
 6                            Chicago, IL 60602

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Houweling v. BFF Louisa - 11/13/2023

```
 1        (Court convened at 10:00 a.m.)
 2             THE COURT:  All right.  Let me explain to you who we
 3   have on the phone.  Y'all probably all know each other.
 4             We have Kelly Brown, my courtroom deputy.  Judy Webb
 5   is our court reporter today.  And Matt Brock is my law clerk.
 6   We also have a black box here that is a public line, since
 7   this is a public hearing.  And I will start recording and then
 8   we'll get about our hearing.
 9             Ms. Brown, can you call the case, please?
10             THE CLERK:  *Houweling Intellectual Properties, Inc.
11   and others versus BFF Louisa 1 LLC*, Civil Action Number
12   3:23-CV-46.
13             THE COURT:  All right.  Let the record reflect that
14   the parties are present through their counsel.  We're here
15   today on the defendant's motion, various different motions.
16             Let's see, who is going to argue on behalf of the
17   defendant?
18             MS. BEANE:  I am, Your Honor, Devon Beane from K&L
19   Gates.
20             THE COURT:  Ms. Beane, good morning to you.  I'll
21   give you the first go.
22             MS. BEANE:  Thank you, Your Honor. We're here on BFF
23   Louisa's motion to dismiss or, in the alternative, stay, and
24   we have presented several bases for this motion, and I want to
25   start with the primary ground on subject matter jurisdiction.
```

1            The plaintiff has alleged infringement under 35
2   U.S.C. 271(a).  That requires that BFF Louisa 1 itself has
3   done one of several things: made the patented invention, not
4   is making; used the patented invention, not plans to use; has
5   offered to sell or sold the patented invention, not purchased;
6   or itself has imported the patented invention, the completed
7   greenhouse, not has caused someone else to do so.  That is
8   what 271(a) requires.
9            The plaintiff has not alleged infringement under
10  271(b), which relates to inducing others to infringe.  The
11  plaintiff has not alleged infringement under 271(c), which
12  deals with contributory infringement.  And the plaintiff has
13  not alleged any action for declaratory relief, which would
14  address something more incomplete than a completed greenhouse.
15           They have alleged a single active infringement,
16  271(a).  And the allegations in the complaint do not establish
17  that BFF Louisa 1, the named defendant in this case, has
18  engaged in any of those actions in a manner that is not
19  inconsistent with the remaining allegations of the complaint.
20           THE COURT:  So, Ms. Beane, help me understand the
21  relationship that exists between VDH and BFF.  It's not clear
22  either through the complaint, and it's not made clear through
23  the motions either.
24           MS. BEANE:  Yeah.  I think that's a --
25           THE COURT:  If you could go back and tell me what's

```
 1   the relationship, who owns the property, who's contracted for
 2   it to be constructed, and once the construction is done, who
 3   is going to have it.
 4           MS. BEANE:  Yes.  So those are great questions, Your
 5   Honor, and I think part of that is because the contract itself
 6   hasn't been introduced into evidence in this case since
 7   Houweling got it as part of their litigation against VDH.
 8           But to start from the beginning, BFF Louisa 1, the
 9   named defendant in this case, entered into a contract with an
10   entity called VDH for the design, construction, and
11   manufacture of a greenhouse, which is what is alleged in the
12   complaint.
13           THE COURT:  And VDH sells greenhouses, as I
14   understand it.  That's their business.
15           MS. BEANE:  That's correct, Your Honor.  And BFF
16   Louisa 1 owns the land in Louisa, Virginia.  They lease that
17   land to another entity, and they are building -- no, BFF
18   Louisa is not building the greenhouse.  VDH is building the
19   greenhouse that BFF Louisa purchased, and so that's the
20   relationship here.
21           Now, the action that Houweling and Kubo have filed in
22   the Northern District of Illinois, which has been pending for
23   over a year now, is against VDH, the Netherlands company.
24   Initially, they also sued VDH Americas, but they dismissed
25   them from the case after the defendant in that case filed a
```

1  motion to dismiss for improper venue.  But that case is about
2  VDH's conduct, and specifically alleged in that case is the
3  BFF Louisa greenhouse that BFF Louisa purchased from VDH to
4  design and build that greenhouse.  That action, that conduct,
5  is at issue in the Northern District of Illinois case.
6          Now, in Houweling's response, they've said, "Well,
7  actually, it's not a complete overlap, and, in fact, when the
8  Northern District of Illinois case is completed, there will
9  still be issues remaining with respect to BFF Louisa," and
10 that is not true.
11         THE COURT:  So if I stay -- and I know we're jumping
12 around, that's not where you wanted to start.
13         MS. BEANE:  No problem.
14         THE COURT:  But if I stay, part of what Houweling's
15 response was is that construction is ongoing; in fact, it's
16 going fast and furious.  If I stay it, does that stay the
17 construction?
18         MS. BEANE:  No, Your Honor, it wouldn't.  But
19 Houweling had the ability to move for a preliminary injunction
20 against VDH which would impact the ongoing construction in
21 Louisa, Virginia, and they chose not to do that.  They could
22 have moved for that relief in the Northern District of
23 Illinois, and if that relief had been granted against VDH, it
24 would impact our construction in this county.  And they did
25 not do so.

1	THE COURT: And if whatever is the outcome of the
2	Northern District of Illinois case, is that binding upon BFF
3	Louisa's continued construction? In other words, if there's
4	infringement, does the construction have to stop? If they
5	find that there is no infringement, you can move forward. Is
6	it that simple?
7	MS. BEANE: It is that simple, Your Honor. If the
8	Court in the Northern District of Illinois finds that the BFF
9	Louisa project that VDH has designed and developed infringes,
10	either they will be awarded some form of damages, in which
11	case our project can continue to be made and it will be
12	subject to those damages, or they would get permanent
13	injunctive relief and we would have to cease the operation of
14	the greenhouse.
15	But they did not try to get any preliminary relief in
16	that case. And to say that we should somehow be required to
17	stop construction is really premature and hasn't been
18	addressed at all in the other litigation where it's undisputed
19	that our greenhouse is specifically alleged in that complaint,
20	and it's been going on for a year.
21	And, now, the other thing that's interesting in the
22	response is they say, you know, there's just -- there's no
23	overlap and the issues are distinct and can be decided
24	separately. Now, before this case was filed, my client, BFF
25	Louisa, wanted to resolve this issue with VDH and tried to do

1  so -- or wanted to resolve this issue with Houweling and Kubo
2  and tried to do so, reached out affirmatively to try to
3  resolve the case, and the response from Houweling and Kubo was
4  that, "Unless you can get VDH to come and settle with us too,
5  we're not discussing anything."
6          And so they have intermingled and commingled us since
7  before the case was started.  We have affirmatively tried to
8  resolve the case in a rational, meaningful manner, and we have
9  been prevented from doing so unless VDH comes to the table.
10 And so to say that VDH and BFF Louisa are not commingled in a
11 way that renders this action completely superfluous of the
12 Northern District Illinois action, it's not true, it is false.
13         And then unless Your Honor has other questions, I'll
14 reserve my time for rebuttal.
15         THE COURT:  Thank you very much.
16         MS. BEANE:  Thank you.
17         THE COURT:  All right.  Who's going to argue on
18 behalf of Houweling?
19         MR. NOONA:  May it please the Court, this is Stephen
20 Noona.  I have Mr. Jaye Heybl who will be arguing.  But I want
21 to raise the procedural issue first just so the Court is aware
22 of it.
23         When Your Honor was assigned to this case, we wrote
24 the other side and disclosed the relationship that my firm has
25 with your brother, and I just -- I don't want to cause any

1  problems, but I don't want to be accused of not raising
2  something that's important.  I assume it's not a problem, but
3  I want to raise it because that's the way I practice.
4           THE COURT:  And I thank you, Mr. Noona.  So my
5  brother is a partner at Kaufman & Canoles in the Richmond
6  office.  Mr. Noona, who, actually, I've known since law
7  school -- I clerked for Kaufman & Canoles way back when and
8  never went to work there after law school.
9           But my brother does not work in the Norfolk office.
10 He does not work in the litigation department, and if you
11 asked him to go to court, he would run the other way.  And I
12 will say that on the record and I will say it to his face.
13          MR. NOONA:  I will agree.
14          THE COURT:  And, also, since I went on the bench over
15 12 years ago, we simply do not talk about litigation matters,
16 even when he was with a previous firm as well.
17          I don't think it's an actual conflict.  If there is a
18 problem, however, then, you know, I'll certainly entertain any
19 discussion in that regard.
20          MS. BEANE:  Thank you, Your Honor.  Just on behalf of
21 the defendant I appreciate the transparency, and we do not
22 have any objection to proceeding.
23          THE COURT:  Okay.  Thank you.
24          MR. NOONA:  I'll be quiet now and Mr. Heybl will
25 speak.  Thank you, Your Honor.

1        THE COURT:  Mr. Heybl.  Go ahead, Mr. Heybl.

2        MR. HEYBL:  Your Honor, can you hear me?

3        THE COURT:  Yes, sir.

4        MR. HEYBL:  I'm happy to jump around, Your Honor, and
5   answer any questions you have.  A couple of issues came up
6   that I wouldn't mind clarifying, but I'm happy to answer any
7   questions.

8        THE COURT:  Go right ahead.

9        MR. HEYBL:  The picture of the relationship of VDH
10  and Better Future Farms Louisa, we call BFF for ease, is a
11  little more complicated.  VDH has a U.S. entity sales division
12  called VDH Americas.  So the sales contract with BFF was
13  entered into with VDH Americas, not the Dutch company.  So we
14  have kind of a three-part relationship here where BFF entered
15  into a sales contract with the U.S. entity, and the extent of
16  their relationship with the Dutch company is unclear.  We have
17  reason to believe that the Dutch company is importing and
18  building the greenhouse, but the actual sales contract is with
19  the U.S. entity.

20       So there's a discussion about --

21       THE COURT:  So that kind of goes to the first point
22  that I cut Ms. Beane off at the beginning about, and that is
23  we're in the midst of construction --

24       MR. HEYBL:  Right.

25       THE COURT:  -- and maybe you can start at the

1  beginning for me.  What's the nature of the patent?  Is it a
2  method patent?  Is it a component patent?  I mean, what are we
3  dealing with here?
4          MR. HEYBL:  Yeah, I'm happy to talk all day long
5  about this patent because I've been living with it for a lot
6  of years.  It's a climate control system for the greenhouses.
7  So if you imagine the greenhouses, they're big, hydroponic
8  greenhouses, and the patent is to a corridor that goes along
9  the growing section of the greenhouse, and it has a series of
10 vents and fans and cooling pads that allow you to control the
11 environment within these greenhouses.
12         And they're many acres.  Our client has one that's
13 150 acres.  So they're very complex.  And the growing of these
14 plants, they're very finicky, so you have to be very careful
15 with the climate control.  And this system allowed for -- the
16 inventive system, the patent allowed for an efficient way to
17 do it with these large greenhouses, and gave you fine control
18 over the climate to make the plants all happy and grow all the
19 same way and to produce -- you know, to increase the
20 production of whatever you're growing.  So it's the efficiency
21 and the control over these large hydroponic greenhouses that
22 this climate control system is directed to.
23         THE COURT:  Is that commonly known as a method
24 patent?
25         MR. HEYBL:  It's not a method patent, Your Honor.

1  It's a utility patent.  It's the features themselves, the
2  vents, the fans, the tubes.
3          THE COURT:  All right.  So if construction stopped
4  today, is there infringement?
5          MR. HEYBL:  We don't know for sure because all we
6  have is pictures on the outside.  But it looks like the
7  greenhouse is done far enough that there's a likelihood of
8  infringement because the climate control system is part of the
9  structure.  And we can see in some of those pictures that
10 there's portions of the structure that look complete.
11         THE COURT:  In other words, operable?
12         MR. HEYBL:  Operable, yeah.
13         THE COURT:  It has to be operable for there to be
14 infringement; is that right?
15         MR. HEYBL:  That's one of the standards, operable to
16 the point that you can test it.
17         THE COURT:  Go right ahead.
18         MR. HEYBL:  So there's also the issue of whether the
19 Illinois case would be binding on BFF.  And just so you know,
20 Houweling and Van der Hoeven have been engaged in litigation
21 of some sort over several years over these patents, and they
22 are not considered friendly, friendly competitors.  And we
23 have -- they've put up all sorts of walls against Houweling's
24 ability to enforce their patent.
25         We mentioned some of the pleadings, but the many

```
 1  proceedings where they -- Van der Hoeven tried to attack the
 2  validity of the patents.  All of which failed, but they still
 3  are continuing with their infringement.
 4          I say that because I don't expect there to be any
 5  cooperation between Houweling and Van der Hoeven.  And if we
 6  get a judgment against Van der Hoeven in Illinois, it's going
 7  to be against Van der Hoeven.  And it's not going to -- I
 8  doubt that Better Future Farms is going to volunteer to be
 9  subject to that judgment, because they are not a party to that
10  action, and they will continue to use their greenhouse when
11  it's built, and that's what we're trying to deal with here.
12          They're moving forward with the construction, and
13  when it's done, they're going to use it and it's going to be
14  an operating greenhouse.  And Van der Hoeven and BFF are not
15  going to help us in having them stop use of the greenhouse
16  because they're just not cooperating at all.
17          THE COURT:  Well, as I hear Ms. Beane, if there is a
18  finding of infringement, whether it be an award of damages
19  that they would be subject -- that perhaps would include
20  royalty or whatever it may be, BFF might be subject to that,
21  or the project would continue subject to that.  Or if there's
22  no infringement, then there's no infringement.
23          MR. HEYBL:  Right.  If there's no infringement,
24  that's true.
25          THE COURT:  Right.  But if there is infringement, as
```

1   I hear Ms. Beane, and it may be a little bit more complicated
2   than simply saying there's an award of damages, because by the
3   time you get through appeals that could be quite some time and
4   they could be several years into the operation of the project.
5           MR. HEYBL:  Right.
6           THE COURT:  But if they agree to be bound by that, by
7   that litigation, does that matter?
8           MR. HEYBL:  Well, it does.  Yeah, it does if they
9   agree to be bound by it.  If the three parties agree to be
10  bound by that decision, yeah, it does matter.  But they
11  haven't yet agreed to be bound by that.
12          THE COURT:  All right.  Well, VDH has to be bound by
13  it because they're a party.
14          MR. HEYBL:  That's true.  That's true.
15          THE COURT:  It's just a question of whether BFF would
16  agree to be bound by that decision.  If they agree to be bound
17  by that decision, what's your position about the continued
18  construction?
19          Suddenly you just went mute, Mr. Heybl.
20          MR. HEYBL:  My apologies.
21          THE COURT:  There you go.
22          MR. HEYBL:  So what was your question again, Your
23  Honor?  I'm sorry.
24          THE COURT:  So if they agree to be bound by the
25  decision, what's your position with respect to continued

```
 1  construction?  Just if there's an award of damages, then
 2  somehow it's allocated to them as well?
 3           MR. HEYBL:  Yeah.  And I suspect there's an agreement
 4  between Better Future Farms and Van der Hoeven, VDH, on
 5  indemnity.  So I suspect Van der Hoeven is going to be on the
 6  hook for any judgment, and construction will continue on, I
 7  would imagine.
 8           THE COURT:  Okay.  Okay.  Anything further?
 9           MR. HEYBL:  No, Your Honor.
10           THE COURT:  All right.  Ms. Beane, is it as easy as
11  BFF agreeing that they're bound by the litigation?
12           MS. BEANE:  It may be.  It may be, Your Honor.  I
13  think that by its very nature we are bound because our project
14  is being constructed by VDH.  Our project is a VDH project
15  that is subject to that case.
16           If damages are awarded, damages can only be awarded
17  one time.  It can't be awarded against VDH and then you come
18  to us and try to get damages for the exact same project.
19  That's called patent exhaustion.  It cannot happen.
20           If injunctive relief is granted against VDH, that
21  doesn't just apply to VDH, that applies to anybody touching
22  those projects.  If BFF Louisa 1 starts operating a project
23  that a court has enjoined, we will be subject to, you know,
24  any number of issues in the Northern District of Illinois
25  court, either through VDH or ourselves being held in contempt.
```

1  And, certainly, we are not going to do that if the project has
2  been found to infringe and a court has ordered the injunction
3  of that project. And so certainly we would agree to be
4  subject to that ruling when it happens, but it doesn't need to
5  also take place in this case. It is the same project at issue
6  in both cases.
7              Now, Mr. Heybl also mentioned issues relating to what
8  the patent covers and what it doesn't cover and he focused on
9  these chambers. The claims of the patent which govern this
10 case start with a greenhouse comprising and it includes things
11 like walls and all sorts of other components that are outside
12 of just the climate control chamber.
13             And so as Mr. Heybl admitted, they don't know the
14 status of our project. Even though they had a private
15 investigator come and take pictures, they still don't know if
16 our project infringes to this day. Now, he's mentioned that
17 it's potentially operable to the point where you can test it.
18 That is not in the amended complaint. That is not alleged
19 currently as we sit here today.
20             But, again, it just feels like a complete waste of
21 everybody's time and resources to proceed with this case when
22 there is another case pending for the exact same conduct.
23 And, again, if it would satisfy this case to dismiss the case
24 if BFF Louisa 1 would accept whatever judgment is entered in
25 the Northern District of Illinois case, I'll have to confer

Case 3:23-cv-00046-RSB-JCH   Document 35   Filed 12/20/23   Page 17 of 18   Pageid#: 345

17

Houweling v. BFF Louisa - 11/13/2023

```
 1  with my clients, but I believe that we would agree to that.
 2          THE COURT:  Well, maybe the thing to do is for
 3  y'all -- in fact, you can stay on this Zoom call, I can make
 4  one of you the host and we can all get off, and have that
 5  discussion.
 6          I would rather not, because I'm not sure there's
 7  enough in the record for me to be able to make a determination
 8  as to whether there's all the collateral, binding effects from
 9  one litigation to the next that may be necessary for there to
10  be an agreement between the parties.  But if y'all could work
11  that piece out, you know, I'll sit on this until after
12  Thanksgiving.  Actually, I start a two-week trial right after
13  Thanksgiving, so it will be the middle of December before I
14  really am able to turn to this, if you want me to sit on it
15  until then.  And if you can work it out, fantastic; if not,
16  then I'll issue an opinion.
17          Mr. Heybl, does that make sense?
18          MR. HEYBL:  It does, Your Honor.
19          THE COURT:  Ms. Beane, does that make sense?
20          MS. BEANE:  Yes, Your Honor.  Thank you.
21          THE COURT:  Do y'all want to stay on here?  We can
22  get off and I can make one of you host.  Or would you rather
23  convene with your clients and then circle back around?
24          MR. HEYBL:  For me, Your Honor, I would rather confer
25  with the client and then get back with Ms. Beane, if that's
```

1  okay.
2          THE COURT:  Okay.  All right.  Why don't y'all do
3  that and I won't -- I think my trial ends by December 10th.  I
4  won't turn my attention to this until after that.  If I
5  haven't seen anything, I'll start working.  All right?
6          Otherwise, Ms. Beane, you're the one that filed the
7  initial motions.  Anything else I need to address on behalf of
8  your client?
9          MS. BEANE:  Not at this time, Your Honor.  Thank you.
10         THE COURT:  Mr. Heybl, anything else on behalf your
11  clients?
12         MR. HEYBL:  No, Your Honor.  I appreciate your time.
13  Thank you.
14         THE COURT:  It's very good to see y'all, and I hope
15  you have a wonderful day.
16         MR. HEYBL:  You too.  Thank you, Your Honor.
17         MS. BEANE:  Thank you, Your Honor.
18         THE COURT:  Thank you very much.  Take care.  You.
19     (Court recessed at 10:25 a.m.)
20                      CERTIFICATE
21  I, Judy K. Webb, certify that the foregoing is a
22  correct transcript from the record of proceedings in
23  the above-entitled matter.
24
25  /s/  Judy K. Webb              Date:  12/20/2023